UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GLOBAL MONTELLO GROUP CORP., <br>     Plaintiff, <br><br> v. <br><br> SEABOARD MARINE, LTD., INC. d/b/a SEABOARD MARINE, LTD. <br>     Defendant. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, Global Montello Group Corp. ("Plaintiff" or "Global"), in the above-entitled action, by and through its attorneys, Holbrook & Murphy, and respectfully files this Complaint for Declaratory Judgment as follows:

### JURISDICTION

1. This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.* and Fed. R. Civ. P. 57 in that a present and actual case and controversy exists between the parties hereto in which Global asks this Court to adjudicate and determine the rights of the parties to a bunker supply contract.

2. There is an actual case and controversy between the parties because the Defendant, Seaboard Marine, Ltd., Inc. d/b/a Seaboard Marine, Ltd. ("Seaboard"), has made demand that Global appear for and defend and indemnify Seaboard in connection with and arbitration pending between Oceanis Marine, Ltd. ("Oceanis") in an arbitration captioned as "*Matter of the Arbitration Act of 1996 and in the Matter of an Arbitration Between Oceanis Marine Ltd. of Liberia (the "Owners") and Seaboard Marine Limited of Miami,*

*Florida (the "Charterers"),*" and which upon information and belief is currently pending in London, United Kingdom (hereafter, the "London Arbitration"). *See generally, Exhibit A.*

3. Global seeks a Declaratory Judgment that, pursuant to the terms of the bunker supply contract between Global and Seaboard, Global is not responsible to appear for and/or defend and indemnify Seaboard in connection with the London Arbitration or otherwise.

4. This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the matter involves corporations with principal places of business in different states and the amount in controversy exceeds $75,000.

5. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(b) and as the bunker supply contract between Global and Seaboard dictates that "[e]ach party expressly submits to the jurisdiction of the courts of the Commonwealth of Massachusetts, U.S.A. and to the federal courts situated herein, as well as to service of process by certified mail." *See Exhibit A* at p. 15.

## THE PARTIES

6. At all times material hereto, Global was and is a corporation organized and existing under the laws of the State of Delaware with a principal office located at 800 South Street, Suite 500, Waltham, Massachusetts 02453.

7. Upon information and belief, at all times material hereto, Seaboard was and is a for profit corporation with a principal place of business at 8001 NW 79th Avenue, Miami, Florida 33166.

**FACTUAL ALLEGATIONS**

8. On December 20, 2019, Integrity Fuels Logistics Corp. ("Integrity Fuels"), acting for and on behalf of Seaboard, emailed Global's Mr. Dana Fraktman, et al. inviting Global to make an offer to provide bunkers to the M/V ERATO (the "Vessel") on or about December 30 or 31, 2019 at the Port of Brooklyn, New York. *See Exhibit B*.

9. Integrity Fuels was duly authorized to act on behalf of Seaboard with respect to procuring bunkers for the Vessel. *See Exhibit D*.

10. On December 20, 2019, Global's Mr. Fraktman responded to Integrity Fuels offer with a quote to provide bunkers to the Vessel at the Port of Brooklyn. *See Exhibit C*.

11. On December 20, 2019, Integrity Fuels sent Global's Mr. Fraktman a "CONFIRMATION" (Numbered 2191358) "ACTING…ON INSTRUCTIONS" from Seaboard confirming that GM would provide bunkers to the Vessel upon arrival at the Port of Brooklyn on "30-31 DEC 2019." *See Exhibit D*.

12. The "CONFIRMATION" (Numbered 2191358) explicitly stated:

> THIS BUNKER NOMINATION SHALL BE GOVERNED BY THE GENERAL TERMS AND CONDITIONS OF THE SUPPLIER, UNLESS OTHERWISE STATED. COPIES OF THE TERMS AND CONDITIONS APPLICABLE ARE AVAILABLE ON REQUEST.

*See Exhibit D*.

13. On December 28, 2019, Integrity Fuels, on behalf of Seaboard, advised that the Vessel indicated that "they need to increase the vlsfo and mgo," listed the amounts, and requested whether this could be accomplished. *See Exhibit E*.

14. On December 30, 2019, Integrity Fuels, on behalf of Seaboard, sent GM's Mr. Fraktman a "final" "CONFIRMATION" (Numbered 22026) "ACTING…ON INSTRUCTIONS" from Seaboard confirming that GM would provide bunkers to the Vessel upon arrival at the Port of Brooklyn on "2-3 JAN 2020." *See Exhibit F*.

3

15. The "final" "CONFIRMATION" (Numbered 22026) explicitly stated:

> THIS BUNKER NOMINATION SHALL BE GOVERNED BY THE GENERAL TERMS AND CONDITIONS OF THE SUPPLIER, UNLESS OTHERWISE STATED. COPIES OF THE TERMS AND CONDITIONS APPLICABLE ARE AVAILABLE ON REQUEST.

*See* Exhibit F.

16. Global's General Terms and Conditions for Bunker Fuels, dated January 2020 ("Global's Terms and Conditions"), explicitly state, *inter alia*, that:

> b. Except for the warrant of title and specifications set forth in this Agreement, NO WARRANTY OF ANY NATURE, EXPRESSED OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS OR SUITABILITY FOR A PARTICULAR PURPOSE IS MADE BY SELLER.

*See Exhibit A* at p. 13.

17. Global's Terms and Conditions, explicitly state, *inter alia*, that:

> e. Except as expressly provided in this Agreement, Seller shall not be liable for consequential, indirect or special losses or special damages of any kind arising out or in any way connected with the performance of or failure to perform the Agreement.

*See Exhibit A* at p. 13.

18. Global's Terms and Conditions, explicitly state, *inter alia*, that:

> b. GOVERNING LAW, JURISDICTION: This Agreement shall be governed and construed in accordance with the internal laws of the Commonwealth of Massachusetts, U.S.A. Each party expressly submits to the jurisdiction of the courts of the Commonwealth of Massachusetts, U.S.A. and to the federal courts situated herein, as well as to service of process by certified mail.

*See Exhibit A* at p. 15.

19. On January 3, 2020, Global delivered bunkers to the Vessel. *See Exhibit A* at p. 9.

20. Upon information and belief, prior to Global's January 3, 2020 delivery of bunker to the Vessel, Global had prior dealings with Seaboard.

4

21. Upon information and belief, prior to Global's provision of bunkers to the Vessel, AmSpec LLC, a third-party petroleum inspection and testing company, confirmed that the bunkers were of the correct specification requested by the Vessel.

22. On January 7, 2020, Global issued Invoice No. 20010545, dated 1/7/2020 to Integrity Fuels/Seaboard, which referenced Global Contract No. SFC19TS0019. *See Exhibit A* at p. 8.

23. Seaboard admits that Global "issued its invoice no. 20010545 for the January 3, 2020 bunker delivery on January 7, 2020, which bore Global contract no. SFC19TS0019." *See Exhibit A* at p. 4.

24. On January 9, 2020, Global issued "credit/rebill invoices for the Erato" to Integrity Fuels/Seaboard. *See Exhibit G*.

25. Seaboard admits that "Global's Terms and Conditions provide at Paragraph 20b, for Massachusetts law and jurisdiction in connection with its Agreement to supply bunker fuel." *See Exhibit A* at p. 4.

26. Upon information and belief, on January 10, 2020, Oceanis received notice from Lloyd's Register's Fuel Oil Bunker Advisory Service ("FOBAS") that the Global bunkers provided to the Vessel were allegedly off-specification because the aluminum and silicone content was too high.

27. Upon receiving notice of the allegation of the provision of off-specification bunkers, Global made immediate efforts to facilitate the de-bunkering and re-bunkering of the Vessel in order to re-bunker the Vessel in accordance with Seaboard's instructions.

28. In or about January and February of 2020, Global de-bunkered and re-bunkered the Vessel at no cost to Seaboard and at Seaboard's instruction.

29. On July 28, 2021, Global first received notice of the London Arbitration. *See Exhibit A.*

30. Prior to July 28, 2021, Global had no notice of the London Arbitration or threat of same.

31. On July 28, 2021, Seaboard's Massachusetts counsel mailed and emailed a "NOTICE OF AND TENDER OF DEFENSE" (and related attachments) ("Notice") to the "Legal Department" at "Global Petroleum, LLC" and "Global Montello Group Corp." at 800 South Street, Suite 500, Waltham, MA 02453." *See generally, Exhibit A.*

32. The Notice purports to seek "to vouch Global into" the London Arbitration and states that Seaboard "look[s] forward to Global's prompt written confirmation, by August 9, 2021, that Global will agree to appear in and defend the London Arbitration commenced by the Owners against Seaboard." *See generally, Exhibit A.*

33. The Notice states that if Global does not "appear and control the defense in London Arbitration within ten days of this letter…Seaboard will commence a proceeding in the United States District Court for the District of Massachusetts in order to seek discovery from Global in the United States in aid of the London arbitration under 28 U.S.C. § 1782." *See Exhibit A* at p. 6.

34. The Notice states "if Global does not…appear and control the defense in the London Arbitration, and Seaboard is held liable to the Owners in the London Arbitration and is forced to proceed against Global in Massachusetts for indemnification, Seaboard will contend that Global is fully bound by the London Arbitration," and "Seaboard's claim for indemnification would include not only the full amount of the underlying London Arbitration award or judgment, but also the London Arbitrators' fees, the fees of Seaboard's London solicitors and experts, and its London Arbitration costs, as well as all

of Seaboard's attorneys' and experts' fees and costs in Massachusetts." *See Exhibit A* at p. 6.

35. The Notice purports to reserve its rights "to assert any and all other claims of causes of action to which it may be entitled under the circumstances, such as for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the implied warranty of workmanlike performance, breach of Uniform Commercial Code Warranties relating to the sale of goods, negligence and/or negligent misrepresentation." *See Exhibit A* at p. 6.

36. On July 29, 2021, Global requested an extension in order to respond to Seaboard's Notice. *See Exhibit H.*

37. On July 30, 2021, Seaboard's Massachusetts counsel wrote Global stating, *inter alia*, that he had "authority to extend Global's time to respond to [the Notice] to COB on August 18, 2021," and stated, "[t]his is the best we can do based on the arbitration scheduling." *See Exhibit H.*

38. On July 30, 2021, a little over twenty (20) minutes after Seaboard's Massachusetts counsel's assent to an extension, Global responded by email inquiring "[w]hat is the arbitration schedule so that we can advise our counsel?" *See Exhibit H.*

39. On Saturday, August 7, 2021, Seaboard's Massachusetts counsel responded to Global's request for the arbitration by stating "[t]he schedule as I'm informed is:

> *At this time the serving of the Defence is August 25th*
> *Following service of the Defence, submissions in Reply are to be served within 14 days after service of Defence submissions. LMAA Questionnaires (submissions on procedural directions) are to be served within 14 days of the service of the Reply submissions."*

*See Exhibit H.*

40. Seaboard picked arbitrators prior to Global's knowledge of the pendency or threat of the London Arbitration.

41. Seaboard did not provide Oceanis's June 30, 2021 Claim Submissions to Global until July 28, 2021.

42. Seaboard did not provide the 780 pages of Exhibits appended to Oceanis's June 30, 2021 Claim Submissions until the early evening of August 11, 2021.

43. In response to Seaboard's Notice, on August 17, 2021, Global offered, pursuant to 28 U.S.C § 1782(b), to provide Seaboard with certain discovery in exchange for Seaboard's stipulation to the terms and conditions of the bunker supply contract, but Seaboard has thus far declined to respond to Global's offer in this regard.

44. Global's Terms and Conditions, explicitly state, *inter alia*, that:

> a.  If any action, at law or in equity, is brought by Seller, either to interpret the provisions of this Agreement or to enforce Buyer's contractual obligation arising from the transactions referenced hereby, Seller shall be entitled to recover its reasonable attorney's fees from Buyer in the principal or related action in addition to any other relief to which Seller may be entitled.

*See Exhibit A* at p. 14.

## COUNT I

**ACTION FOR DECLARATORY RELIEF CONFIRMING THE TERMS AND CONDITIONS OF THE BUNKER SUPPLY CONTRACT AND DECLARING THAT GLOBAL HAS NO DUTY TO APPEAR AT LONDON ARBITRATION OR DEFEND AND INDEMNIFY SEABOARD AND CONFIRMING AN AWARD OF FEES AND COSTS TO GLOBAL**

45. Global hereby repeats and re-alleges each and every allegation set forth in Paragraph One January 2020
    (1) through Forty-Four (44) as if set forth herein.

46. Global and Seaboard entered into a bunker supply contract for the provision of bunker fuels to the Vessel.

47. The bunker supply contract between Global and Seaboard included Global's Terms and Conditions.

48. The bunker supply contract between Global and Seaboard is "governed and construed in accordance with the internal laws of the Commonwealth of Massachusetts." *See Exhibit A* at p. 15.

49. The bunker supply contract between Global and Seaboard dictates that "[e]xcept for the warrant of title…NO WARRANTY OF ANY NATURE, EXPRESSED OR IMPLIED, INCLUDING, WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY OR FITNESS OR SUITABILITY FOR A PARTICULAR PURPOSE IS MADE BY [GLOBAL]." *See Exhibit A* at p. 13.

50. The bunker supply contract between Global and Seaboard dictates that "[e]xcept as expressly provided in this Agreement, [Global] shall not be liable for consequential, indirect of special losses or special damages arising out or in any way connected with the performance of failure to perform the Agreement." *See Exhibit A* at p. 13.

51. The bunker supply contract between Global and Seaboard dictates that "[i]f any action, at law or in equity, is brought by [Global], either to interpret the provisions of [the bunker supply contract] or to enforce [Seaboard's] contractual obligation arising from the transactions referenced hereby, [Global] shall be entitled to recover its reasonable attorney's fees from [Seaboard] in the principal or related action in addition to any other relief to which [Global] may be entitled." *See Exhibit A* at p. 14.

52. Seaboard's Notice seeks to hold Global liable for damages specifically excluded by the bunker supply contract and Global's Terms and Conditions by, *inter alia*, demanding that

9

Global "agree to appear in and defend the London Arbitration commenced by the Owners against Seaboard." *See generally, Exhibit A.*

53. Seaboard's Notice seeks to hold Global liable for damages specifically excluded by the bunker supply contract and Global's Terms and Conditions by, *inter alia*, threatening to "commence a proceeding in the United States District Court for the District of Massachusetts in order to seek discovery from Global in the United States in aid of the London arbitration under 28 U.S.C. § 1782." *See Exhibit A* at p. 6.

54. Seaboard's Notice seeks to hold Global liable for damages specifically excluded by the bunker supply contract and Global's Terms and Conditions by, *inter alia*, threatening that "if Global does not…appear and control the defense in the London Arbitration, and Seaboard is held liable to the Owners in the London Arbitration and is forced to proceed against Global in Massachusetts for indemnification, Seaboard will contend that Global is fully bound by the London Arbitration." *See Exhibit A* at p. 6.

55. Seaboard's Notice seeks to hold Global liable for damages specifically excluded by the bunker supply contract and Global's Terms and Conditions by, *inter alia*, threatening that "Seaboard's claim for indemnification would include not only the full amount of the underlying London Arbitration award or judgment, but also the London Arbitrators' fees, the fees of Seaboard's London solicitors and experts, and its London Arbitration costs, as well as all of Seaboard's attorneys' and experts' fees and costs in Massachusetts." *See Exhibit A* at p. 6.

56. Seaboard's Notice seeks to hold Global liable for damages specifically excluded by the bunker supply contract and Global's Terms and Conditions by, *inter alia*, threatening "to assert any and all other claims of causes of action to which it may be entitled under the

circumstances, such as for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of the implied warranty of workmanlike performance, breach of Uniform Commercial Code Warranties relating to the sale of goods, negligence and/or negligent misrepresentation." *See Exhibit A* at p. 6.

57. Under the bunker supply contract, Seaboard's actions in connection with its Notice and demands necessitating the instant Declaratory Judgment Action "brought by [Global]…to interpret the provisions of [the bunker supply contract]" and "to enforce [Seaboard's] contractual obligation arising from the transactions referenced hereby" "entitle[s] [Global] to recover its reasonable attorney's fees from [Seaboard]" in this Declaratory Judgment Action and otherwise. *See Exhibit A* at p. 14.

58. As a result of Seaboard's demand that Global appear for and/or defend and indemnify Seaboard in connection with the London Arbitration or otherwise and threats to seek damages in excess of those specifically allowed by the bunker supply contract, Global has sustained actual prejudice, including but not limited to, involving its insurers and engaging Massachusetts and English counsel, and seeks this Honorable Court's Declaratory Judgment confirming the terms of the bunker supply contract and Seaboard's wrongful demands and threats under the bunker supply contract.

59. Until such time as Global is able to have its rights and responsibilities under the bunker supply contract adjudicated and confirmed, Global will continue to suffer prejudice and uncertainty with respect to an ongoing London Arbitration to which it is not a party to and is not involved.

60. As a result, a real justiciable issue exists with regard to the existence of valuable rights under the bunker supply contract, and a *bona fide*, actual, and present dispute calling for this Honorable Court's Declaratory Judgment.

WHEREFORE, the Plaintiff, Global Montello Group Corp., prays that this Honorable Court enter judgment for Plaintiff, Global Montello Group Corp., on Count I of its Complaint for Declaratory Judgment against the Defendant, Seaboard Marine, Ltd., Inc. d/b/a Seaboard Marine, Ltd., and:

1. Enter a Declaratory Judgment declaring that the bunker supply contract is valid and that Global's Terms and Conditions are a part of the bunker supply contract between Seaboard and Global.

2. Enter a Declaratory Judgment declaring that Global is not liable to indemnify Seaboard for any damages, including but not limited to any underlying London Arbitration Award or judgment, London Arbitrators' fees, Seaboard's London solicitors and experts, Seaboard's London Arbitration costs, and Seaboard's attorneys' and experts' fees and costs in Massachusetts or otherwise.

3. Enter a Declaratory Judgment declaring that the Global has no obligation to appear in, defend, or indemnify Seaboard in connection with the London Arbitration commenced by Oceanis against Seaboard.

4. Enter a Declaratory Judgment declaring that Global is not bound by any finding, decision, judgment, or otherwise in connection with the London Arbitration between Oceanis and Seaboard.

5. Enter a Declaratory Judgment declaring that the London Arbitration will not result in a finding of estoppel, preclusion, or res judicata with regard to Global.

6. Enter a Declaratory Judgment that Global is entitled to recover from Seaboard all costs and fees, including attorneys' fees, incurred in connection with the Declaratory Judgment Action, the London Arbitration, the threatened 28 U.S.C. § 1782 action, or otherwise regarding this dispute.

7. Award Global any and all additional relief this Honorable Court deems Global is entitled and/or just and equitable.

Respectfully submitted,

The Plaintiff, Global Montello Group Corp.

By its attorneys,

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley (BBO No. 670232)
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA  02110
(617) 428-1151
sblatchley@holbrookmurphy.com

### Certificate of Service

I, Samuel P. Blatchley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 19, 2021.

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley (BBO No. 670232)
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA  02110
(617) 428-1151
sblatchley@holbrookmurphy.com